Christopher Gregg Thomas
PO Box 11718
Bozeman, MT 59719
406.599.35762
gthomasblrf@gmail.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| In re, | Chapter 11 |
|---|---|
| CHRISTOPHER GREGG THOMAS, | Case No. 2:26-bk-20103-BPH |
| Debtor. | |
| | |
| CHRISTOPHER GREGG THOMAS, | DEBTOR'S MOTION TO DISMISS |
| Debtor-In-Possession, | CHAPTER 11 CASE, AND NOTICE |

Christopher Gregg Thomas, the Debtor and debtor in possession, moves pursuant to 11 U.S.C. § 1112(b) for dismissal of this Chapter 11 case. Because of the elapsed time in the turnover motion filed at ECF 25, filed 5/13/2026. The Debtor recognizes a feasible plan to reorganize no longer exists and that cause exists to determine whether the present Chapter 11 case should continue. The Debtor does not ask the Court to preserve an unworkable reorganization indefinitely. The issue is which available result best protects creditors and preserves value: dismissal, conversion, or appointment of a Chapter 11 fiduciary. For the reasons below, dismissal is preferable to conversion. The Debtor advised the United States Trustee approximately one week ago that he intended to file this Motion. The Debtor understands that the United States Trustee also intends to request a hearing concerning conversion or dismissal, presently anticipated for August 10, 2026. This Motion is intended to place the Debtor's position and supporting factual record before the Court so that the competing alternatives may be considered together.

## I. RELIEF REQUESTED

The Debtor requests entry of an order:

1. dismissing this Chapter 11 case under 11 U.S.C. § 1112(b);

2. denying conversion to Chapter 7;

3. declining to appoint a Chapter 11 trustee or examiner;

4. providing that dismissal does not adjudicate the validity, priority, extent, or amount of any disputed lien, claim, transfer, ownership interest, defense, or cause of action;

5. preserving existing state-court claims and defenses for determination in the appropriate forum;

6. allowing a short and orderly transition period if the Court determines one is needed; and,

7. granting such further relief as is just.

## II. THE CASE WAS FILED IN A GOOD-FAITH EFFORT TO PRESERVE OPERATING VALUE

The Debtor commenced this case to preserve real and personal property, stabilize secured obligations, recover operating equipment, continue income-producing activity, and propose a repayment structure more beneficial than immediate dismemberment of the Debtor's property and operations.  The case was not filed upon the assumption that creditors would be denied payment or permanently restrained from exercising remedies.

The contemplated reorganization depended materially upon:

A. continued construction, excavation, hauling, and equipment-related income;

B. recovery and use of substantial operating property held by BSP;

C. stabilization of mortgages and other secured obligations;

D. continued development of rental and short-term lodging income;

E. resolution of lien and preference litigation; and

F. sufficient time to organize an unusually large volume of historical transactions and financial records.

Those objectives were not facially irrational when the case began.

## III. THE FACTUAL BASIS FOR THE ORIGINAL REORGANIZATION HAS MATERIALLY CHANGED

The equipment-recovery process has developed into extensive litigation concerning: Prompt turnover did not occur; The larger dispute continued and the time-sensitive operating opportunity diminished; The Debtor can no longer represent that return of the disputed equipment would now restore the same business opportunity that existed when turnover was requeste. The passage of time has therefore eliminated the equipment-based path to a feasible plan.

## IV. THE DEBTOR DOES NOT SEEK TO MINIMIZE THE SERIOUS ISSUES RAISED BY THE UNITED STATES TRUSTEE

The United States Trustee has raised substantial concerns regarding the administration and feasibility of this Chapter 11 case. The Debtor does not minimize those concerns, nor does he ask the Court to preserve a Chapter 11 case that no longer presents a realistic path to confirmation. Rather, the remaining question under § 1112(b) is whether dismissal or conversion is in the best interests of creditors and the estate.

2:26-bk-20103-BPH   Doc#: 114   Filed: 07/21/26   Page 3 of 10

The Debtor does not contend that those issues are trivial.  It's a reasonable proposition that survival accounting does not follow standard operating procedures. The Debtor does contend that disputed transactions should be treated as complicated, informal, poorly documented, and/or subject to correction.  The Debtor has produced substantial financial records and has continued identifying items requiring amendment or clarification.

V. DISMISSAL IS IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE

Section 1112(b) directs the Court, upon cause, to determine whether dismissal or conversion is in the best interests of creditors and the estate.  The relevant comparison is not whether Chapter 7 could investigate additional issues.  A Chapter 7 trustee can almost always investigate something.  The proper comparison is whether conversion is reasonably likely to produce a meaningful net benefit after accounting for:

- • liens;
- • co-owner interests;
- • exemptions;
- • sale expenses;
- • taxes;
- • trustee compensation;
- • professional fees;
- • litigation cost;
- • delay;
- • and the destruction of ongoing income.

The present record does not establish that conversion will generate a meaningful net distribution.

VI. COMPARATIVE EFFECT OF DISMISSAL AND CONVERSION

## VII. COMPARATIVE EFFECT OF DISMISSAL AND CONVERSION

| ISSUE | DISMISSAL | CONVERSION |
|---|---|---|
| Creditor remedies | Immediately restored under nonbankruptcy law | Delayed through estate administration |
| Discharge | No discharge | No discharge available in this case |
| Operating income | Debtor continues working and earning | Possible interruption, sale, or abandonment of assets |
| Real property | Secured creditors may foreclose or negotiate | Trustee must investigate, market, litigate, or abandon |
| Family and co-owner interests | Rights resolved in proper state proceedings | Estate incurs cost litigating ownership and lien validity |
| Pawn dispute | Returns to existing state litigation and jury forum | Trustee inherits complex, disputed claims |
| Administrative expense | Chapter 11 expense stops | Chapter 7 expense begins |
| Potential equity | Creditors may pursue it directly | Must exceed liens, costs, exemptions, and co-ownership |

VII. DISMISSAL DOES NOT PROVIDE THE DEBTOR AN UNFAIR BANKRUPTCY

BENEFIT

The Debtor is not eligible for a discharge in this case. Dismissal therefore does not allow the

Debtor to receive a discharge while escaping the burdens of Chapter 11.

Upon dismissal, the Debtor understands:

A. the automatic stay terminates as provided by law;

B. secured creditors may pursue foreclosure and repossession;

C. judgment creditors may use lawful collection remedies;

D. liens remain enforceable unless separately avoided or adjudicated;

E. fraudulent-transfer and lien-priority claims remain available under applicable law;

F. creditors may garnish nonexempt income and levy nonexempt property; and

G. pending state-court actions may continue.

Creditors are not left remediless. They regain the ordinary remedies that existed before the petition.

## VIII. CONVERSION MAY DESTROY VALUE WITHOUT PRODUCING A NET DISTRIBUTION

The Debtor's principal sources of potential value include personal labor, project management, construction and excavation skills, property operations, rental activity, pending litigation, and the ability to negotiate with secured creditors. Many of those values are not readily liquidated. A forced sale may:

- interrupt income;

- impair short-term rental operations;

- eliminate the Debtor's ability to complete work;

- impose brokerage and closing expenses;

- trigger taxes;

- require litigation with co-owners;

- and generate no meaningful residual value after liens.

Conversion is justified only if the likely net recovery exceeds those costs and losses. The existence of nominal asset value does not establish realizable bankruptcy equity.

6

## IX. THE PAWN LITIGATION IS BETTER SUITED TO STATE COURT

The pawn dispute originated in Montana state court. BSP demanded a jury.

The controversy involves:

- Montana licensing statutes;
- Montana motor-vehicle title law;
- Montana dealer law;
- contract interpretation;
- settlement breach;
- fraud and reliance allegations;
- statutory damages;
- lien priority;
- Montana pawn statutes;
- and numerous interested parties.

The bankruptcy court may resolve issues necessary to administer the estate, but continued Chapter 11 administration should not be maintained solely to provide a federal forum for a broad state-law dispute. Dismissal permits the existing state-court action to resume and allows all necessary parties to be joined.

## X. THE DEBTOR'S ONGOING OPERATIONS SUPPORT DISMISSAL

The Debtor and household have developed or continued several income sources, including:

- excavation and hauling work;
- construction-related services;
- equipment rental when available;
- short-term rental operations;
- longer-term RV-site income;
- property management;
- campground or Hipcamp development;
- and other labor-based revenue.

These operations do not presently support a confirmable Chapter 11 plan with sufficient

7

certainty. They do, however, provide a basis for continued earnings and payment outside bankruptcy.

Dismissal allows creditors to pursue lawful remedies while preserving the Debtor's ability to work and generate income from which claims may be paid.

XI. A CHAPTER 11 TRUSTEE OR EXAMINER WOULD NOT SOLVE THE FEASIBILITY PROBLEM

Appointment of a Chapter 11 trustee would add fiduciary and professional expense without restoring the lost operating window.

A trustee would inherit:

• disputed property;

• incomplete or contested ownership records;

• family and co-owner interests;

• pending adversary proceedings;

• the pawn litigation;

• secured-creditor negotiations;

• and a business model dependent substantially upon the Debtor's personal labor and relationships.

An examiner would produce additional investigation expense without itself creating revenue or a confirmable plan.

Where the principal feasibility problem is economic rather than managerial, a new fiduciary does not necessarily create value.

## XII. CONCLUSION

The Chapter 11 case was filed to preserve operating value and pursue a feasible repayment structure. The principal equipment-based path has been lost through delay, disputed ownership, competing interests, and extensive state-law litigation. Continued Chapter 11 administration would create additional expense without a sufficiently reliable path to confirmation. Conversion would initiate another layer of administration without an established likelihood of a meaningful net distribution.

Dismissal restores all lawful creditor remedies, provides the Debtor no discharge, preserves disputed rights for determination in the proper forums, and permits continued income generation.

The Debtor respectfully requests dismissal rather than conversion.

NOTICE OF OPPORTUNITY TO RESPOND
AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

NOTICE OF HEARING
Date: _____
Time:_____
Location:_____

DATED this 21st day of July, 2026.

Respectfully submitted,

/s/ Christopher Gregg Thomas
_____
Christopher Gregg Thomas
Debtor and Debtor in Possession, Pro Se

CERTIFICATE OF SERVICE

I, Christopher Gregg Thomas, certify under penalty of perjury that on the 21st day of July, 2026, DEBTOR'S MOTION TO DISMISS CHAPTER 11 CASE, AND NOTICE  by filing/transmitting the same to the Clerk of Court for filing, email to Rob Birkle of BSP of Helena, and by placing a true and correct copy in the United States Mail, first-class postage prepaid, addressed to:

I further certify that notice will be transmitted through CM/ECF upon filing to registered participants entitled to electronic notice.

DATED this 21st day of July, 2026.

/s/ Christopher Gregg Thomas
Christopher Gregg Thomas