Christopher Gregg Thomas
PO Box 11718
Bozeman, MT 59719
406.599.35762
gthomasblrf@gmail.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re, | CHAPTER 11 |
| CHRISTOPHER GREGG THOMAS, | CASE NO. 2:26-BK-20103-BPH |
| Debtor. | |
| CHRISTOPHER GREGG THOMAS, | **DEBTOR'S BRIEF REGARDING DISMISSAL OR CONVERSION UNDER 11 U.S.C. § 1112(B)** |
| Debtor-In-Possession, | |

Christopher Gregg Thomas ("Debtor"), appearing pro se, submits this brief concerning Debtor's

Motion to Dismiss at ECF No. 114 and the Acting United States Trustee's Motion to Convert or

Dismiss at ECF No. 115.

Debtor's motion requested dismissal. The grounds supporting dismissal remain those stated in

ECF No. 114. In particular, the record must be evaluated based upon likely **net** value after liens,

co-owner interests, exemptions, taxes, sale expenses, trustee compensation, professional fees,

and litigation expense—not merely gross property values or the face amounts of disputed claims.

Debtor does not, however, ask the Court to find that conversion is categorically unavailable or

incapable of benefiting creditors. ECF No. 114 argued that the record then before the Court did

not establish a meaningful net benefit from conversion. Debtor continues to stand by that

narrower proposition. But if the Court concludes from the United States Trustee's submission

and the evidence at hearing that neutral Chapter 7 administration of estate property and estate

causes of action is likely to produce a material net benefit for creditors, Debtor does not oppose conversion and will cooperate fully.

Debtor does not request continued Chapter 11 administration as a fallback under either outcome.

I. REAL PROPERTIES HAVE BEEN STABILIZED FOR SALE, NOT FOR A LONG-TERM REORGANIZATION

The financial developments since the commencement of this case do not establish a permanent basis for Chapter 11 reorganization. They do establish that the scheduled real properties have been substantially stabilized while they are marketed for sale.

Over approximately thirteen weeks before and after the commencement of this case, spouse Margaret Thomas liquidated approximately $4,000 per week—approximately $52,000—from an investment account titled in her name. Those funds were used for property preservation and conversion to interim rental use, including equipment-rental charges, rock and site materials, electrical and RV utility work, furnishings, operating supplies, and certain out-of-pocket expenses associated with this case. Margaret Thomas also contributed substantial work to the rental conversion and management effort. Debtor supplied substantial physical labor, maintenance, management, and coordination.

This brief does not ask the Court to adjudicate whether those funds were legally separate property, to allow Margaret Thomas a reimbursement or administrative claim, or to determine the ultimate ownership or allocation of resulting rental receipts. The purpose of disclosing the funding is to explain accurately how the properties were stabilized. The supporting account statements, invoices, booking records, and accounting records are available.

The relevant real properties are presently marketed for sale. Arrangements have been reached with three of the four principal real-property lenders to resume payments. Payments under the NewRez arrangement concerning the principal residence began August 1, 2026. The commencement dates under the other arrangements are reflected in the written lender communications.

Based upon existing reservations and expected seasonal demand, the rental operations are projected to meet or materially contribute toward property-level operating expenses and agreed debt service during August through October, again during December through February, and beginning again in May if the properties have not sold. Debtor does not represent that the properties will remain permanently cash-flow positive. The rental income is a bridge to sale, not a basis for extending Chapter 11.

The principal residence itself is not represented as a stand-alone rental property. Limited RV-site and related operations at the property contribute toward its carrying costs and the NewRez payment while preserving the family residence.

The current strategy is to maintain occupied and marketable collateral, avoid preventable deterioration and foreclosure expense, make agreed payments, reduce secured balances to the extent payments are applied to principal, and permit orderly sales. The amount, if any, ultimately available for unsecured creditors cannot be reliably determined until net sale proceeds and the pending litigation are resolved.

## II. BOTH REMEDIES HAVE IDENTIFIABLE CREDITOR CONSEQUENCES

Dismissal remains supported because it would provide Debtor no discharge, terminate the automatic stay, restore creditors' nonbankruptcy remedies, permit the payment and sale arrangements to continue, and allow the predominantly state-law ownership, lien, contract, and tort disputes to proceed in appropriate forums without another layer of estate administration.

Conversion has different potential benefits. It would place estate property, avoidance rights, and estate causes of action under a neutral fiduciary; preserve centralized administration; reduce the risk of a race among creditors; and permit an independent assessment of disputed ownership, recoveries, and litigation value.

The recent stabilization is relevant under either remedy. Under dismissal, it reduces the risk of an immediate uncontrolled collapse and permits continued carrying of the listed properties. Under conversion, it would provide the Chapter 7 trustee with properties that are occupied, maintained, listed, and subject to developing lender arrangements rather than unfinished or abandoned assets.

Appointment of a Chapter 11 trustee or examiner would not solve the absence of a confirmable plan and would create further Chapter 11 expense. If the Court determines that neutral fiduciary administration is necessary, conversion to Chapter 7 is the more direct remedy.

The Court need not decide the merits of the disputed liens, ownership interests, claims, defenses, or causes of action to select the appropriate remedy. It need only determine whether dismissal or conversion is more likely to produce a meaningful net benefit for creditors after accounting for the practical costs and consequences of each.

III CONCLUSION

Debtor respectfully requests dismissal for the reasons stated in ECF No. 114 and this brief.

Alternatively, if the Court determines that neutral Chapter 7 administration is more likely to preserve or realize material net value and better serve all creditors, Debtor does not oppose conversion and will cooperate fully with the Chapter 7 trustee.

Debtor does not request that this Chapter 11 case continue and requests that the merits of all disputed liens, ownership interests, claims, defenses, and causes of action be reserved except to the extent a determination is necessary to select the remedy.

Respectfully submitted the 4th day of August, 2026


/s/ Christopher Gregg Thomas

Christopher Gregg Thomas

Debtor, pro se


CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify under penalty of perjury that on the 4th day of August, 2026, a copy of the foregoing was served by electronic means on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

/s/ Christopher Gregg Thomas

Christopher Gregg Thomas

Debtor, pro se